Opinion filed December 1,
2011

 

 

                                                                       In The

                                                                              

  Eleventh
Court of Appeals

                                                                   __________

 

                                                         No. 11-10-00232-CV

                                                    __________

 

 HELMERICH & PAYNE
INTERNATIONAL DRILLING CO., Appellant

 

                                                             V.

 

                                           BOPCO,
L.P., Appellee



 

                                   On
Appeal from the 385th District Court

 

                                                          Midland
County, Texas

 

                                                  Trial
Court Cause No. CV-46938 

 



 

                                                                  O
P I N I O N

            This
case involves the interpretation of a daywork drilling contract.  The parties
disagree as to the date that the 1,095-day term of the contract commenced.  Upon
construing the contract, the trial court rendered summary judgment granting
declaratory relief to appellee, BOPCO, L.P.[1] 
The trial court declared, among other things, that the 1,095-day contract term
commenced on March 20, 2007.  Appellant, Helmerich & Payne International
Drilling Co. (H&P), appeals from the trial court’s summary judgment.  We
affirm.

Background
Facts 

            In
late 2005, BOPCO needed a drilling rig for the purpose of drilling wells in
Colorado. H&P agreed that it would manufacture a drilling rig and then use
that rig to drill wells for BOPCO.  In January 2006, representatives from BOPCO
and H&P executed a daywork drilling contract.  The parties used a standard fill-in-the-blank
form contract prepared by the International Association of Drilling
Contractors.  The parties deleted parts of the form contract, and they made
some additions to the contract.  

            Under
the contract, BOPCO was the “Operator,” and H&P was the “Contractor.”  The
contract provided that BOPCO had engaged H&P as an independent contractor
to drill various wells on a daywork basis.  Paragraph 2 of the contract
provided as follows:

2. COMMENCEMENT DATE:

      Contractor
agrees to use reasonable efforts to commence operations for the drilling of the
well by on or about the 20th day of March, 2007.

 

As shown above,
the parties struck the word “by” from Paragraph 2 of the form contract.  The
parties added the “on or about” language and inserted the March 20, 2007 date
in Paragraph 2. Paragraph 6 of the contract provided as follows:

6. TERM:

     6.1 Duration of
Contract: This Contract shall remain in full force and effect until drilling
operations are completed on the well or wells specified in Paragraph 1 above,
or for a term of 1095-days, or at rig release of any well being
drilled by operator on the 1095th day, whichever is later, commencing on
the date specified in Paragraph 2 above (subject to 27.7 Early Termination).

 

As shown above,
the parties struck the language in the contract beginning with the word “until”
and ending with the word “or.”  The parties added the term “1095-days” in the
blank.  They also added, in handwriting, the words that are italicized above.

            In Paragraph
4 of the contract, BOPCO agreed to pay H&P a day rate of $23,300 per day
for work performed by H&P under the contract.  By later agreement, the day
rate was changed to $23,800 per day.  The contract contained an early
termination provision.  Paragraph 27.7 of the contract provided, in relevant
part, as follows:

27.7 Early Termination
Provision:

            Operator
shall have the right to terminate the Contract at any time after the date of
execution of the Contract by both parties and prior to the expiration of the
first 1,095 calendar days thereafter (the “Early Termination”) by giving thirty
(30) days’ prior written notice to the Contractor, conditional upon Operator
paying Contractor the Early Termination amount and other amounts specified
below.

 

            In
the event of Early Termination, Operator shall pay to the Contractor an Early Termination
Amount equal to the number of days remaining in the 1,095 calendar day term
multiplied by $14,000.  Operator shall pay in one payment (within thirty (30)
calendar days of the date of Contractor’s invoice) such Early Termination
amount.  The Early Termination amount is in addition to all other amounts due
and owing under the Contract prior to the date of such Early Termination,
including without limitation the mobilization and demobilization payments.

 

By later agreement, the parties increased the early termination
rate to $14,500 per day.

            The
parties added a typewritten liquidated damages provision to the contract.  Paragraph 27.15
of the contract provided as follows:

27.15 
Notwithstanding the foregoing, in the event Commencement of Operations has not
occurred by March 20, 2007 for reasons wholly within Contractor’s reasonable
control, Contractor will pay Operator, as liquidated damages for such delay and
not as a penalty, a sum equal to $2,500 per day (the “Delay Payment”) for each
day after April 20, 2007 that Commencement of Operations has not occurred, up
to a maximum of $225,000.  Such payment will be Operator’s sole remedy and
Contractor will have no other liability for any delay in the Commencement of
Operations.

 

            H&P
experienced delays in manufacturing the rig and, therefore, did not commence
drilling operations under the contract until June 4, 2007.  As required by
Paragraph 27.15 of the contract, H&P paid liquidated damages to BOPCO in
the amount of $2,500 per day covering the forty-five day period from April 20,
2007 until June 4, 2007.  The liquidated damages totaled $112,500.  When H&P
commenced operations under the contract, BOPCO began paying H&P the day rate
of $23,300 per day for use of the rig.

            In
2009, BOPCO exercised its right to terminate the contract early.  By letter
dated April 21, 2009, BOPCO provided H&P thirty-days’ written notice
of its intent to terminate the contract, “effective May 21, 2009 or at rig
release from the [well], whichever occurs later.”  In the letter, BOPCO’s
representative stated that, “[a]ccording to section 6.1 and section 2 of the
contract, the term of the agreement is 1095 days from March 20, 2007 and thus
an early termination payment of approximately $4,228,000 (adjusted to final rig
release date if after 5/21/09) will be payable by BOPCO, L.P to H&P within
30 days of receipt of an invoice.”  BOPCO’s representative requested H&P to
send such an invoice.  In response, H&P took the position that, based on
the applicable provisions of the contract, the 1,095-day contract term began on
the date that it commenced operations under the contract.  Therefore, in an
e-mail to BOPCO, a representative of H&P stated that “[t]he days remaining
in the term, for purposes of Paragraph 27.7, must be calculated from
commencement, which was on or after delivery of the rig on June 4, 2007.”

            The
rig release occurred on May 30, 2009; therefore, the contract was terminated on
that date.  H&P calculated that 368.67 days remained on the 1,095-day
contract term when BOPCO terminated the contract.  Therefore, H&P billed BOPCO
as follows: “368.67 Days x $14,500 Early Termination per day = $5,345,715.”  BOPCO
believed that 292.25 days remained on the 1,095-day contract term when it
terminated the contract.  Therefore, it paid H&P the amount of $4,091,500 (292.25
days x $14,000).  After this case was filed in the trial court, BOPCO paid H&P
the additional sum of $146,125 ($500 x 292.25) because the parties had agreed
to increase the early termination rate to $14,500 per day.  

            BOPCO
filed this cause against H&P.  BOPCO sought a declaratory judgment from the
trial court that the 1,095-day contract term commenced on March 20, 2007.  BOPCO
also sought to recover attorney’s fees.  H&P filed a counterclaim against BOPCO
for breach of contract.  H&P’s breach-of-contract claim was based on its
contention that the 1,095-day contract term commenced on June 4, 2007.  H&P
also sought to recover attorney’s fees.  Both parties moved for summary
judgment on their claims.  Following a hearing, the trial court granted BOPCO’s
motion and denied H&P’s motion.  The trial court awarded BOPCO the
following declaratory relief in an amended final summary judgment: that the 1,095-day
term commenced on March 20, 2007; that BOPCO properly exercised its right to
early termination of the contract under Paragraph 27.7 by giving thirty-days’
written notice to H&P and paying the proper early termination amount of
$4,237,625 to H&P; and that BOPCO had fully paid H&P the amount due for
BOPCO’s early termination of the contract.  The trial court also awarded reasonable
and necessary attorney’s fees to BOPCO in the amount of $100,000 and awarded
additional attorney’s fees to BOPCO conditioned on the pursuit and outcome of
appeals.  The trial court entered a take-nothing judgment against H&P on
its claims.  H&P appeals from the trial court’s amended final summary
judgment.

Issues
on Appeal

            H&P
presents two issues for review.  In its first issue, H&P contends that the
trial court erred by granting BOPCO’s motion for summary judgment.  In its
second issue, H&P contends that the trial court erred by denying its motion
for summary judgment.




 

Standard
of Review

            Both
parties filed traditional motions for summary judgment under Rule 166a of the Texas
Rules of Civil Procedure.  Tex. R. Civ.
P. 166a.  We review the trial court’s summary judgment de novo.  Valence
Operating Co. v. Dorsett, 164 S.W.3d 656, 661 (Tex. 2005).  When, as here,
both parties move for summary judgment on the same issues and the trial court
grants one motion and denies the other, we consider the summary judgment
evidence presented by both sides and determine all questions presented.  Valence
Operating, 164 S.W.3d at 661; Meadows v. Midland Super Block Joint
Venture, 255 S.W.3d 739, 742 (Tex. App.—Eastland 2008, no pet.).  If we
determine that the trial court erred, we must render the judgment that the
trial court should have rendered.  Valence Operating, 164 S.W.3d at 661.

Analysis

            Paragraph
18 of the contract provided that it was to be construed and interpreted in
accordance with Oklahoma law.  The parties agree that Oklahoma substantive law
applies to their dispute, and we will apply that law here.  We note that Oklahoma’s
rules of contract construction are very similar to Texas’s rules of contract
construction.  In both states, a court’s primary concern when interpreting a
contract is to ascertain and give effect to the parties’ intent as that intent
is expressed in the contract.  Okla. Stat.
Ann. tit. 15, §§ 152, 155; Seagull Energy E & P, Inc. v. Eland
Energy, Inc., 207 S.W.3d 342, 345 (Tex. 2006).

            The
parties disagree as to the date that the 1,095-day contract term commenced.  BOPCO
argues, as the trial court declared, that the 1,095-day term commenced on March
20, 2007.  H&P argues that the 1,095-day term commenced on June 4, 2007.  Both
parties rely on rules of contract construction in arguing their respective
positions.  Neither party claims that the contract is ambiguous.  Under
Oklahoma law, if the terms of a contract are unambiguous, clear, and
consistent, they are accepted in their plain and ordinary sense, and the
contract will be enforced to carry out the intention of the parties as it
existed at the time it was negotiated.  S. Corrs. Sys., Inc. v. Union City
Pub. Sch., 64 P.3d 1083, 1088 (Okla. 2002).  Contractual intent is
determined from the entire agreement.  Id. at 1088-89.  Where a contract
is complete and unambiguous, its language is the only legitimate evidence of
what the parties intended.  Id. at 1089.

            Paragraph
2 of the contract governed commencement of operations. Pursuant to Paragraph 2,
H&P agreed “to use reasonable efforts to commence operations for the
drilling of the well on or about the 20th day of March, 2007.”  Paragraph 6 of
the contract governed the term of the contract.  Paragraph 6.1 provided, and
the parties agree, that the 1,095-day contract term was to commence “on the
date specified in Paragraph 2.”

            BOPCO
contends that the date specified in Paragraph 2 was March 20, 2007, and that,
therefore, the parties intended the 1,095-day term to commence on that date.  In
response to BOPCO’s argument, H&P contends that, if the parties had
intended for the 1,095-day term to commence on March 20, 2007, they would have
put that date in Paragraph 6.1.  By using the words “date specified in
Paragraph 2” in Paragraph 6.1, H&P asserts that the parties incorporated
the entirety of Paragraph 2 into Paragraph 6.1, as opposed to incorporating
just the March 20, 2007 date from Paragraph 2.  H&P contends that “[t]he
purpose for incorporating Paragraph 2 into Paragraph 6.1 was to make the 1,095-day
term of the contract correspond with the commencement of operations under the
contract” and that, therefore, the parties intended the 1,095-day term to
commence when drilling operations commenced under the contract.

            In
response to H&P’s argument, BOPCO asserts that the parties did not
incorporate the entirety of Paragraph 2 into Paragraph 6.1.  To support this
assertion, BOPCO contends that nothing in the contract supports the proposition
that the parties incorporated the entirety of Paragraph 2 into Paragraph 6.1.  BOPCO
notes that the parties neither stated in Paragraph 6.1 that the 1,095-day term
would be “commencing as per Paragraph 2” nor used language in Paragraph 6.1
incorporating “the provisions of Paragraph 2.”  Instead, as BOPCO states in its
brief, the parties stated in Paragraph 6.1 that the 1,095-day term was to
commence “on the date specified in Paragraph 2.”

            In
construing the contract, we must accept the contract language in its plain,
ordinary, and popular sense.  Haworth v. Jantzen, 172 P.3d 193, 197
(Okla. 2006).  This rule of contract construction supports BOPCO’s
interpretation of the contract.  In Paragraph 6.1, the parties agreed that the
contract would be “commencing on the date specified in Paragraph 2.”  “Specified”
means “name[d] or state[d] explicitly or in detail.”  Merriam-Webster’s Collegiate Dictionary 1198 (11th ed. 2004).
“Explicitly” means “fully revealed or expressed without vagueness, implication,
or ambiguity.”  Id. at 441.  Thus, the plain and ordinary meaning of “date
specified” is a date that is named or stated explicitly or in detail.  The only
date that was stated explicitly in Paragraph 2 was March 20, 2007.  Based on
the plain and ordinary meaning of the language used by the parties in Paragraph
6.1, we conclude that they intended the 1,095-day contract term to commence on
March 20, 2007, and that they did not intend to incorporate the entirety of
Paragraph 2 into Paragraph 6.1.      

            Additionally,
we note that the parties did not state in Paragraph 6.1 that the 1,095-day contract
term would commence on the date that H&P commenced operations under the
contract.  The parties could have included such language in Paragraph 6.1 had
they intended the 1,095-day contract term to commence on the date that operations
commenced under the contract.  We also note that, under H&P’s
interpretation of the contract, at the time the parties entered the contract, there
would have been uncertainty as to the date the 1,095-day contract term would
commence.  Under its interpretation, H&P could have delayed commencement of
operations for a year, or even more, and the 1,095-day contract term would not
have commenced until the date that H&P commenced operations.  We do not
believe that the parties intended such a result.                                   

            H&P
contends that BOPCO’s interpretation of the contract renders the words “on or
about” in Paragraph 2 meaningless.  In Paragraph 2.1, H&P agreed to use
reasonable efforts to commence operations on or about March 20, 2007.  H&P
asserts that, by using the words “on or about,” the parties emphasized that
March 20, 2007, was not a required date to commence operations but only a
“target” date to commence them.  Based on this assertion, H&P argues that
the “date specified” in Paragraph 2 for commencing operations was a date
estimated by the parties to be “on or about” March 20, 2007.  H&P contends
that BOPCO’s interpretation – that March 20, 2007, was the “date specified” in
Paragraph 2 – effectively eliminates the “on or about” language.  

            However,
BOPCO’s interpretation does not render the words “on or about” meaningless.  A
distinction exists between the date that the 1,095-day contract term would
commence and the date that H&P would commence operations under the contract. 
H&P’s contention fails to recognize this distinction.  Paragraph 2.1
required H&P to use reasonable efforts to commence operations “on or about”
March 20, 2007.  BOPCO’s interpretation does not change this requirement.  We
have concluded above that the parties did not incorporate the entirety of
Paragraph 2 into Paragraph 6.1.  Rather, they incorporated only the “date
specified” in Paragraph 2 into Paragraph 6.1, which was March 20, 2007.  The
“on or about” language applied to H&P’s obligation to commence operations
under the contract; it did not apply to the date that the contract term would
commence.                   

            However,
even if “on or about March 20, 2007” was the “date specified” in Paragraph 2,
we would conclude that the trial court’s interpretation of the contract was
correct.  H&P relies on Hopkins v. National Bank of Norman, 188 P.
667 (Okla. 1920), to support its contention that March 20, 2007, was not a set
date for commencing the contract term.  Hopkins involved a suit to set
aside an earlier judgment.  188 P. 667.  In Hopkins, the plaintiff
alleged that Ned Hopkins died “on or about January 4, 1912.”  Id. at
668.  However, the record showed that Ned Hopkins did not die until sometime
after January 4, 1912.  He had been personally served with process in the
earlier suit on January 5, 1912.  The defendants contended that the plaintiff’s
allegation that Ned Hopkins died on or about January 4, 1912, was contradicted
by actual facts that were disclosed by the record and that, therefore, the
trial court had not erred in sustaining their demurrer to the plaintiff’s
petition.  Id.  The Oklahoma Supreme Court disagreed with the defendants’
contention.  The court explained the effect of the plaintiff’s allegation that
Ned Hopkins died “on or about January 4, 1912.”  In so doing, the court quoted
Black’s Law Dictionary for the proposition that “on or about” is “[a] phrase
used in reciting the date of an occurrence or conveyance, to escape the
necessity of being bound by the statement of an exact date.”  Id.  Based
on the plaintiff’s use of “on or about” language, the Oklahoma Supreme Court
held that the plaintiff was not bound by the specific date of January 4, 1912,
that was alleged in her petition and that, therefore, the trial court had erred
in dismissing the suit.  Id.   

            Hopkins
did not hold that the words “on or about” could be used to define an indefinite
or uncertain date.  Nor did it hold that the words “on or about” could refer to
a date that was not in close proximity to the specific date alleged.  The
current version of Black’s Law Dictionary defines “on or about” as follows:

        Approximately;
at or around the time specified.  This language is used in pleading to prevent
a variance between the pleading and the proof, usu. when there is any
uncertainty about the exact date of a pivotal event.  When used in nonpleading
contexts, the phrase is mere jargon.

 

Black’s Law Dictionary 1198 (9th ed. 2009). 
Based on this definition, even assuming that “on or about March 20, 2007,” was
the “date specified” in Paragraph 2, we would conclude that the 1,095-day term
of the contract commenced on March 20, 2007.

            H&P
also contends that interpreting the 1,095-day contract term to commence on
March 20, 2007, conflicts with Paragraph 27.15 for two reasons.  We have
quoted Paragraph 27.15 above.  It provided that H&P would pay liquidated
damages, referred to as a “Delay Payment,” to BOPCO in the amount of $2,500 per
day for each day after April 20, 2007, that H&P had not commenced
operations under the contract, provided that the delay in commencing operations
was caused by reasons wholly within H&P’s reasonable control.  Paragraph
27.15 limited H&P’s liability for liquidated damages to a maximum amount of
$225,000.  Paragraph 27.15 also provided that the payment of liquidated
damages to BOPCO would be BOPCO’s sole remedy and that H&P would have no
other liability for a delay in commencing operations.

            First,
H&P contends that the trial court’s interpretation of the contract
conflicts with Paragraph 27.15 because Paragraph 27.15 shows that March 20,
2007, was only a “target” date for commencing operations and that, therefore,
the parties did not intend the contract term to commence on March 20, 2007.  Under
Paragraph 27.15, H&P’s obligation to pay liquidated damages in the amount
of $2,500 per day did not begin until the day after April 20, 2007.  H&P states
in its brief that “[t]he April 20 date again reinforces the fact that the
parties did not intend to start anything on March 20, 2007; not even the daily
payments for missing the target date.” However, nothing in Paragraph 27.15
referred to the date that the 1,095-day term of the contract would commence.  Paragraph
27.15 contained no language that could be construed as establishing or modifying
the date that the contract term would commence.  Paragraph 27.15 addressed H&P’s
obligation to commence operations under the contract and required H&P to
pay liquidated damages to BOPCO if H&P failed to commence operations by
April 20, 2007.  Thus, Paragraph 27.15 provided to H&P a 30-day lag period
after March 20, 2007, before it had to pay damages.  Providing H&P with the
lag period is not inconsistent with the intent to have the contract term
commence on March 20, 2007.  The language used in Paragraph 27.15 does not
support H&P’s contention that the parties did not intend the contract term
to commence on March 20, 2007.                  

            Second,
H&P contends that the trial court’s interpretation of the contract
conflicts with the “sole remedy” aspect of Paragraph 27.15.  H&P did not
commence operations under the contract until June 4, 2007.  On the same day, BOPCO
began paying H&P the day rate of $23,300 per day.  Based on H&P’s delay
in commencing operations, it paid BOPCO liquidated damages as required by
Paragraph 27.15 in the amount of $112,500.  Therefore, H&P contends that BOPCO
was afforded its “sole remedy” under Paragraph 27.15.  H&P asserts that the
trial court’s declaration that the 1,095-day contract term commenced on March
20, 2007, as opposed to June 4, 2007, as urged by H&P, afforded BOPCO two
separate remedies as a result of H&P’s delay in commencing operations:  (1)
“[liquidated damages] under Paragraph 27.15” and (2) “over $1 million in
early termination payments that BOPCO avoided paying by reinterpreting the
commencement language.”

            Contrary
to H&P’s contention, the trial court’s interpretation did not give BOPCO an
additional remedy.  In Paragraph 27.15, the parties addressed H&P’s contractual
obligation to commence operations.  Paragraph 27.15 limited H&P’s liability
to BOPCO for H&P’s delays in commencing operations, and it provided that H&P’s
payment of liquidated damages would be BOPCO’s “sole remedy” for H&P’s
delays in commencing operations.  In Paragraph 27.15, the parties did not
address BOPCO’s obligations to H&P under the contract, such as the
obligation to pay the day rate or the early termination fee.  For example, in
Paragraph 27.15, the parties did not state that BOPCO had the obligation to pay
the day rate or the early termination fee for a total of 1,095 days after
H&P commenced operations under the contract.  While the trial court’s
interpretation of the contract affected the length of time that BOPCO had to
pay the early termination fee, the interpretation did not conflict with
Paragraph 27.15 because Paragraph 27.15 had nothing to do with BOPCO’s
contractual obligations to H&P.

            The
trial court correctly declared that the 1,095-day contract term commenced on
March 20, 2007.  Therefore, under the well-known standards of review that
we have set forth, the trial court did not err by granting BOPCO’s motion for
summary judgment and denying H&P’s motion for summary judgment.  H&P’s
issues on appeal are overruled.

This
Court’s Ruling

            The
judgment of the trial court is affirmed. 

 

 

                                                                                                TERRY
McCALL

                                                                                                JUSTICE  


       

December 1, 2011

Panel consists of:  Wright, C.J.,

McCall, J., and Hill, J.[2]









                [1]BEPCO Operating Company was a party to the contract. 
BOPCO is the successor-in-interest to BEPCO. 





[2]John G. Hill, Former Justice, Court of Appeals, 2nd
District of Texas at Fort Worth, sitting by assignment.